IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CR-111-D
No. 5:23-CV-351-D

| | |
|---|---|
| AUGUSTO ESPINDOLA-PINEDA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

On June 10, 2023, Augusto Espindola-Pineda ("Espindola-Pineda" or "petitioner") moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his 228-month sentence [D.E. 652, 656]. On August 28, 2023, the government moved to dismiss [D.E. 665] and filed a memorandum in support [D.E. 666]. On August 29, 2023, the court notified Espindola-Pineda of the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 667]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On September 18, 2023, Espindola-Pineda responded in opposition [D.E. 668] and moved for appointment of counsel [D.E. 669]. As explained below, the court grants the government's motion to dismiss, dismisses Espindola-Pineda's motion to vacate, and denies Espindola-Pineda's motion for appointment of counsel.

I.

On May 20, 2020, pursuant to a plea agreement, Espindola-Pineda pleaded guilty to conspiracy to distribute and possession with the intent to distribute five kilograms or more of cocaine. See [D.E. 356, 369]. On October 16, 2020, the court held Espindola-Pineda's sentencing hearing. See [D.E. 477]. The court adopted the facts as set forth in the Presentence Investigation

Report ("PSR") and resolved Espindola-Pineda's objections. See PSR [D.E.475] ¶¶ 19–33; Sent. Tr. [D.E. 522] 5–23; Fed. R. Crim. P. 32(i)(3)(A)–(B). Espindola-Pineda's counsel argued that: (1) the currency seizure and total drug accountability were inflated and included transactions not attributed to Espindola-Pineda and (2) Espindola-Pineda should receive a minimal participant sentence reduction under U.S.S.G. § 3B1.2(a) of four or three levels. See Sent. Tr. 5–23. The court found that the currency seizure and total drug accountability were correct and that Espindola-Pineda was not a minimal participant. See id. at 9, 23. The court calculated Espindola-Pineda's total offense level to be 33, his criminal history category to be IV, and his advisory guideline range to be 188 to 235 months' imprisonment. See id. at 23. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Espindola-Pineda to 228 months' imprisonment. See id. at 33–35, 37. On October 31, 2020, Espindola-Pineda appealed. See [D.E. 483]. On March 22, 2022, the United States Court of Appeals for the Fourth Circuit enforced the appellate waiver in the plea agreement and dismissed Espindola-Pineda's appeal. See [D.E. 597, 598, 608].

On June 10, 2023, Espindola-Pineda moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his 228-month sentence. See [D.E. 652, 656]. In Espindola-Pineda's motion, he argues: (1) his trial counsel was ineffective by failing to recognize that the government could not prove the required elements for the charged conspiracy; (2) his trial counsel was ineffective by influencing him to take the plea agreement without a translator present and promising any sentences would run concurrently; (3) his trial counsel was ineffective by failing to conduct an adequate and independent pre-trial investigation; (4) his trial counsel was ineffective by failing to recognize that there was no evidence to support a conviction or the drug weight; (5) his trial counsel was ineffective by failing to object to the PSR's drug weight and forced Espindola-Pineda to sign the plea agreement; (6) his appellate counsel was ineffective by stating that there were no grounds for appeal

2

and by failing to argue that his sentence exceeded the guidelines; (7) prosecutorial misconduct occurred when he was charged with acts of the conspiracy after being arrested; (8) prosecutorial misconduct occurred when the prosecution promised a concurrent sentence and threatened a section 851 enhancement if he did not sign the plea agreement; (9) prosecutorial misconduct occurred when he was purposefully prosecuted; (10) his sentence exceeds "that of what it should have been"; (11) his sentence is excessive because he can only be held accountable for the days he was actually involved in the conspiracy; (12) his sentence is excessive because he is only responsible for the cocaine found on December 9, 2018, in the amount of 50 kilograms; (13) his sentence is excessive because the base offense level was too high and exceeds the sentencing guidelines and section 3553(a) factors; (14) he was denied the right to appeal his claims because of his appellate counsel's failure to communicate and his appellate counsel's statement that there were no grounds for appeal; and (15) his sentence would have been reduced if appellate counsel raised his claims. See [D.E. 656] 4–10; [D.E. 656-1] 1–6. The government moves to dismiss Espindola-Pineda's motion for failure to state a claim upon which relief can be granted. See [D.E. 665].

II.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a petition's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a petition's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at

3

302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In reviewing a section 2255 motion, the court is not limited to the motion itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

The government argues that Espindola-Pineda's motion is untimely. Section 2255(f) contains a one-year statute of limitations. See 28 U.S.C. § 2255(f). Section 2255(f) provides that the one-year clock is triggered by one of four conditions, whichever occurs last:

(1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id. § 2255(f)(1)–(4); see Johnson v. United States, 544 U.S. 295, 299–300 (2005); Whiteside v. United States, 775 F.3d 180, 182–83 (4th Cir. 2014) (en banc). As for section 2255(f)(1), Espindola-Pineda's conviction became final on June 20, 2022, 90 days after the Fourth Circuit entered its judgment on March 22, 2022. See Clay v. United States, 537 U.S. 522, 525 (2003). Using the date of the petition, see [D.E. 652] 8, and applying the prison mailbox rule, Espindola-Pineda filed his

4

motion to vacate on June 10, 2023. See Houston v. Lack, 487 U.S. 266, 275–76 (1988). Thus, his section 2255 motion is timely.

As for Espindola-Pineda's ineffective assistance of counsel claims, the "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United States, 582 U.S. 357, 363–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001). "[S]entencing is a critical stage of trial at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed." United States v. Breckenridge, 93 F.3d 132, 135 (4th Cir. 1996). To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Espindola-Pineda must show that his attorney's performance fell below an objective standard of reasonableness, and he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984).

When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. A party also must show that counsel's deficient performance prejudiced the party. See id. at 691–96. A party does so by showing that there is a "reasonable probability" that, but for the deficiency, "the

5

result of the proceeding would have been different." Id. at 694.

To prove prejudice from deficient performance at sentencing, a defendant must prove a reasonable probability that the defendant would have received a different total sentence if the error had not occurred. See Sears v. Upton, 561 U.S. 945, 955–56 (2010); United States v. Carthorne, 878 F.3d 458, 469–70 (4th Cir. 2017). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In his first claim, Espindola-Pineda alleges his trial counsel was ineffective by failing to realize the government could not prove the necessary offense elements. See [D.E. 656-1] 1. During Espindola-Pineda's Rule 11 hearing, Espindola-Pineda testified that he was "completely and fully satisfied" with his trial counsel, which contradicts his complaint about trial counsel's failure to understand the offense's elements. Rule 11 Tr. [D.E. 553] 26. He also swore that he discussed his entire plea agreement with his trial counsel and understood it. See id. at 25–26. And, he swore that he committed the crime. See id. at 35; cf. Strickland, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions"). Thus, Espindola-Pineda could have raised any concerns about the elements of the offense and the plea agreement before pleading guilty. To the extent Espindola-Pineda's trial counsel did not understand or failed to explain the elements of the offense or to the extent Espindola-Pineda misunderstood the elements, the court cured any such deficiency during the Rule 11 hearing and before Espindola-Pineda pleaded guilty. See Rule 11 Tr. 25–26; Blackledge, 431 U.S. at 74.

Alternatively, Espindola-Pineda has failed to plausibly allege prejudice from his trial counsel's alleged deficiency. Espindola-Pineda does not plausibly allege that if trial counsel had understood the elements, then Espindola-Pineda would not have pleaded guilty and proceeded to

6

trial. See [D.E. 656-1] 1; [D.E. 668] 9; cf. Lee, 582 U.S. at 368–69; Hill v. Lockhart, 474 U.S. 52, 59 (1985). He merely argues that "it would have come out differently." [D.E. 668] 9. In light of Espindola-Pineda's sworn statements at his Rule 11 hearing, Espindola-Pineda's post hoc self-serving statements do not plausibly suggest prejudice. See, e.g., Blackledge, 431 U.S. at 74; United States v. Moussaoui, 591 F.3d 263, 299–300 (4th Cir. 2010); United States v. Lemaster, 403 F.3d 216, 221–23 (4th Cir. 2005); United States v. Merritt, 102 F. App'x 303, 307–08 (4th Cir. 2004) (per curiam) (unpublished); Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991). Accordingly, Espindola-Pineda's first claim fails. See Strickland, 466 U.S. at 687–96.

In his second claim, Espindola-Pineda alleges his trial counsel was ineffective by influencing him to take the plea agreement without a translator present and promising any sentences would run concurrently. See [D.E. 656-1] 2. During Espindola-Pineda's Rule 11 hearing, Espindola-Pineda testified that he was "completely and fully satisfied" with his trial counsel, which contradicts his second claim. See Rule 11 Tr. 26. Before pleading guilty, he also swore that he discussed his entire plea agreement with his trial counsel, understood it, no one "made any promise that induced [him], that is, made [him] decide to plead guilty other than promises contained in the plea agreement, including the supplement to it," and no one "threatened [him] or anyone else or forced [him] in any way to plead guilty." See id. at 25–27. These sworn statements bind Espindola-Pineda. See, e.g., Blackledge, 431 U.S. at 74; Moussaoui, 591 F.3d at 299–300.

Alternatively, Espindola-Pineda has failed to plausibly allege prejudice from his trial counsel's alleged deficiency. Espindola-Pineda merely argues that "it would have come out differently." [D.E. 668] 9. Again, Espindola-Pineda's post hoc self-serving statements do not plausibly suggest prejudice. See, e.g., Blackledge, 431 U.S. at 74; Moussaoui, 591 F.3d at 299–300;

7

Lemaster, 403 F.3d at 221–23; Merritt, 102 F. App'x at 307–08; Diaz, 930 F.2d at 835. Accordingly, Espindola-Pineda's second claim fails. See Strickland, 466 U.S. at 687–96.

In Espindola-Pineda's third claim, he alleges that his trial counsel failed to conduct an adequate and independent pretrial investigation. See [D.E. 656-1] 2. "Although counsel should conduct a reasonable investigation into potential defenses, Strickland does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." Dyess, 730 F.3d at 362; see Green v. French, 143 F.3d 865, 892 (4th Cir. 1998), overruled on other grounds by Williams v. Taylor, 529 U.S. 362 (2000). To prevail on a claim that counsel failed to conduct an adequate pretrial investigation, the petitioner must identify what an adequate investigation would have revealed. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996).

Espindola-Pineda fails to plausibly allege how his trial counsel's pretrial investigation was deficient or prejudicial. Again, during Espindola-Pineda's Rule 11 hearing, Espindola-Pineda testified that he was "completely and fully satisfied" with his trial counsel, which contradicts his third claim. Rule 11 Tr. 26. Nonetheless, Espindola-Pineda now argues that trial counsel failed to "prepare his best course of defense." [D.E. 656-1] 2. But Espindola-Pineda has not plausibly alleged what an adequate pretrial investigation would have revealed. See id. Thus, Espindola-Pineda has not plausibly alleged deficient performance. See Strickland, 466 U.S. at 687–96.

Alternatively, Espindola-Pineda has failed to plausibly allege prejudice from the allegedly deficient pretrial investigation. See [D.E. 668] 9. Accordingly, Espindola-Pineda's third claim fails. See Strickland, 466 U.S. at 687–96.

In Espindola-Pineda's fourth claim, he alleges that his trial counsel failed to recognize that

8

there was no evidence to support a conviction or the PSR's drug weight. See [D.E. 656-1] 3. Again, during Espindola-Pineda's Rule 11 hearing, Espindola-Pineda testified that he was "completely and fully satisfied" with his trial counsel. Rule 11 Tr. 26. Moreover, Espindola-Pineda did not object at his Rule 11 hearing to the government's factual basis for Espindola-Pineda's guilty plea. See id. at 35–41. Furthermore, at sentencing, Espindola-Pineda's trial counsel objected to the drug weight. See Sent. Tr. 5–9.

Alternatively, Espindola-Pineda fails to plausibly allege that the drug weight in the PSR affected his decision to plead guilty or affected his sentencing beyond "it would have come out differently." [D.E. 668] 9. Accordingly, Espindola-Pineda's fourth claim fails. See Strickland, 466 U.S. at 687–96.

In Espindola-Pineda's fifth claim, he alleges his trial counsel failed to object to the PSR's drug weight, which ultimately forced him to plead guilty. See [D.E. 656-1] 3. Espindola-Pineda, however, pleaded guilty before probation prepared the PSR. Moreover, the PSR contained an objection to the drug weight from Espindola-Pineda's trial counsel. See PSR Add. Furthermore, Espindola-Pineda's trial counsel argued this objection at the sentencing hearing. See Sent. Tr. 5–9. The court overruled the objections at the sentencing hearing. See id. at 23. Accordingly, Espindola-Pineda's fifth claim fails. See Strickland, 466 U.S. at 687–96.

In Espindola-Pineda's sixth and fifteenth claims, he alleges his appellate counsel failed to argue that his sentence exceeded the advisory sentencing guidelines and stated that there were no grounds for an appeal. See [D.E. 656-1] 3. "[S]trategic decisions are 'virtually unchallengeable.'" Powell v. Kelly, 562 F.3d 656, 670 (4th Cir. 2009). Furthermore, the collateral-attack waiver bars such a claim. See [D.E. 59] ¶ 2(c). Alternatively, Espindola-Pineda fails to plausibly allege that any

9

other strategy existed. Accordingly, Espindola-Pineda's sixth and fifteenth claims fail. See Strickland, 466 U.S. at 687–96.

A prisoner generally cannot use section 2255 to raise claims he did not raise on direct appeal. See, e.g., Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621 (1998); United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001), abrogated on other grounds by Clay v. United States, 537 U.S. 522 (2003). To avoid such procedural default, a prisoner must plausibly allege "actual innocence" or "cause and prejudice" resulting from an alleged sentencing error about which he now complains. See Bousley, 523 U.S. at 622–24; Coleman v. Thompson, 501 U.S. 722, 753 (1991); United States v. Frady, 456 U.S. 152, 170 (1982); United States v. Pettiford, 612 F.3d 270, 280–85 (4th Cir. 2010); Sanders, 247 F.3d at 144; United States v. Mikalajunas, 186 F.3d 490, 492–95 (4th Cir. 1999).

Additionally, a prisoner cannot use section 2255 to relitigate claims raised on direct appeal that the court dismissed pursuant to an appellate waiver. See United States v. Linder, 552 F.3d 391, 396–97 (4th Cir. 2009); United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976); Reese v. United States, No. 7:08-cr-34, 2014 WL 253440, at *12 (E.D.N.C. Jan. 23, 2014) (unpublished), appeal dismissed, 570 F. App'x 287 (4th Cir. 2014) (per curiam) (unpublished). In his plea agreement, Espindola-Pineda agreed:

> [t]o waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal the conviction and whatever sentence is imposed on any ground, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing, and further to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the [d]efendant at the

10

time of the [d]efendant's guilty plea. The foregoing appeal waiver does not constitute
or trigger a waiver by the United States of any of its rights to appeal provided by law.

[D.E. 59] ¶ 2(c). In light of Espindola-Pineda's Rule 11 proceeding, the collateral-attack waiver in the plea agreement is enforceable. See Rule 11 Tr. 13–14, 16, 31–32; United States v. Copeland, 707 F.3d 522, 528–30 (4th Cir. 2013); United States v. Davis, 689 F.3d 349, 354–55 (4th Cir. 2012) (per curiam); United States v. Thornsbury, 670 F.3d 532, 537 (4th Cir. 2012); United States v. Blick, 408 F.3d 162, 168 (4th Cir. 2005).

In Espindola-Pineda's seventh claim, he alleges prosecutorial misconduct by charging him with a conspiracy after his arrest. See [D.E. 656-1] 4. Espindola-Pineda failed to raise this claim on appeal. See [D.E. 29] 7–11.[1] Espindola-Pineda does not allege that he is actually innocent of the crime for which he pleaded guilty, but rather he argues that the prosecution charged him unfairly. See [D.E. 656-1] 4. Thus, he procedurally defaulted this claim. Accordingly, Espindola-Pineda's seventh claim fails.

In Espindola-Pineda's eighth claim, he alleges prosecutorial misconduct because the prosecution allegedly promised a concurrent sentence and threatened a section 851 enhancement if he did not sign the plea agreement. See [D.E. 656-1] 4. Espindola-Pineda failed to raise this claim on appeal. See [D.E. 29] 7–11.[2] Espindola-Pineda does not allege that he is actually innocent of the crime for which he pleaded guilty, but rather he argues that the prosecution made promises and threats surrounding his plea agreement. See [D.E. 656-1] 4. Thus, he procedurally defaulted this claim. Accordingly, Espindola-Pineda's eighth claim fails.

In Espindola-Pineda's ninth claim, he alleges he was "purposefully . . . prosecuted." [D.E.

---

[1] This citation is to the appeal docket, case number 20-4556.

[2] This citation is to the appeal docket, case number 20-4556.

11

656-1] 4. Espindola-Pineda failed to raise this claim on appeal. See [D.E. 29] 7–11.[3] Moreover, Espindola-Pineda does not allege that he is actually innocent of the crime for which he pleaded guilty. See [D.E. 656-1] 4. Thus, he procedurally defaulted this claim. Accordingly, Espindola-Pineda's ninth claim fails.

Alternatively, Espindola-Pineda's seventh, eighth, and ninth claims fail on their merits. In assessing a prosecutorial misconduct claim, the court must determine "whether the conduct so infected the [sentencing hearing] with unfairness as to make the resulting [sentence] a denial of due process." United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002) (quotation omitted). "The test for reversible prosecutorial misconduct has two components; first, the defendant must show that the prosecutor's . . . conduct [was] improper and, second, the defendant must show that such . . . conduct prejudicially affected his substantial rights . . . ." Id.; see United States v. Caro, 597 F.3d 608, 624–25 (4th Cir. 2010).

Espindola-Pineda has not plausibly alleged prosecutorial misconduct in his seventh, eighth, or ninth claim. Cf. United States v. Chorman, 910 F.3d 102, 113–14 (4th Cir. 1990) (party asserting prosecutorial misconduct must specifically identify improper prosecutorial behavior and prejudice). For his seventh claim, Espindola-Pineda did not object at his Rule 11 hearing to the government's factual basis for Espindola-Pineda's guilty plea, including being charged with the acts of the conspiracy after being arrested. See Rule 11 Tr. 35–41. For his eighth and ninth claims, Espindola-Pineda swore that no one "made any promise that induced [him], that is, made [him] decide to plead guilty other than promises contained in the plea agreement, including the supplement to it" and no one "threatened [him] or anyone else or forced [him] in any way to plead guilty." Id. at 25–27.

---

[3] This citation is to the appeal docket, case number 20-4556.

12

Accordingly, Espindola-Pineda's seventh, eighth, and ninth claims fail on the merits.

In Espindola-Pineda's tenth, eleventh, twelfth, and thirteenth claims, he alleges this court should vacate his sentence because it is excessive. See [D.E. 656-1] 4–5. Espindola-Pineda failed to raise these claims on appeal. See [D.E. 29] 7–11.[4] Espindola-Pineda does not allege that he is actually innocent of the crime for which he pleaded guilty, but rather he argues that the court should have imposed a lower sentence. See [D.E. 656-1] 4–5. Thus, Espindola-Pineda procedurally defaulted these claims. Alternatively, the collateral-attack waiver in Espindola-Pineda's plea agreement bars his claims to the extent he challenges the advisory guidelines range or his within guideline sentence. Furthermore, as discussed at sentencing, even if the court miscalculated the advisory guideline range, the court stated that it would impose the same sentence as an alternative variant sentence. See Sent. Tr. 36. Espindola-Pineda's attack on his advisory guideline range and sentence falls within the collateral-attack waiver. Thus, the waiver bars the claim. Accordingly, Espindola-Pineda's tenth, eleventh, twelfth, and thirteenth claims fail.

In Espindola-Pineda's fourteenth claim, he alleges that he was denied the right to appeal his claims. Espindola-Pineda's appellate counsel, however, appealed his case. See [D.E. 29].[5] The Fourth Circuit enforced Espindola-Pineda's binding plea agreement and dismissed his appeal. See [D.E. 120]. Accordingly, Espindola-Pineda's fourteenth claim fails.

Additionally, Espindola-Pineda moved pro se for an appointment of counsel. See [D.E. 669]. Espindola-Pineda is not entitled to a lawyer in this action. See, e.g., Ross v. Moffitt, 417 U.S. 600, 610–11 (1974). Thus, the court denies this motion as baseless.

---

[4] This citation is to the appeal docket, case number 20-4556.

[5] This citation is to the appeal docket, case number 20-4556.

After reviewing the claims presented in Espindola-Pineda's motion, the court finds that reasonable jurists would not find the court's treatment of Espindola-Pineda's claims debatable or wrong and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

III.

In sum, the court GRANTS respondent's motion to dismiss [D.E. 665], DISMISSES petitioner's motions to vacate [D.E. 652, 656], DENIES petitioner's motion for appointment of counsel [D.E. 669], and DENIES a certificate of appealability.

SO ORDERED. This 24 day of October, 2023.

JAMES C. DEVER III
United States District Judge